# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D16-4139

———————————————

MARY BAKER and JANET THORNTON,

    Appellants,

    v.

ECONOMIC RESEARCH SERVICES, INC.,

    Appellee.

———————————————

On appeal from the Circuit Court for Leon County.
Charles W. Dodson, Judge.

March 22, 2018


PER CURIAM.

Economic Research Services, Inc., (ERS) sued former employees Mary Baker and Janet Thornton. Baker and Thornton moved to dismiss, arguing they were sued in the wrong venue. The trial court denied their motion, and Baker and Thornton appeal. We reverse because of an agreement that venue for certain claims would lie only in Delaware.

I.

Baker and Thornton once worked for ERS. In 2015, they resigned and started working for an ERS competitor, Berkley Research Group, LLC (BRG). Soon after, ERS sued Baker,

Thornton, and BRG in Leon County Circuit Court, alleging that the three engaged in "predatory acts" designed to harm ERS's Tallahassee office. The complaint asserted both contract and tort claims. It alleged Baker and Thornton violated non-compete provisions and restrictive covenants contained in the parties' written agreements. There were three agreements at issue: a 2007 Members Agreement, a 2011 Stockholder Agreement, and a 2015 compensation plan.[1] The 2007 and 2011 agreements had forum-selection clauses, but ERS argued those clauses were no longer in force and that their enforcement would be "unjust, unreasonable and violative of the express terms of the agreements."

The defendants moved to dismiss. They contended the claims against Baker and Thornton based on the 2007 and 2011 agreements failed because the 2015 compensation plan superseded those agreements, rendering them void. Alternatively, the defendants contended that if the 2007 and 2011 agreements remained in force, the forum-selection clauses precluded litigation in Florida. In response, ERS presented three arguments. First, ERS argued the forum-selection clauses had not survived the termination of the agreements. Second, ERS claimed that the venue issue was not yet ripe because if the 2015 compensation plan controlled (as the defendants alleged), it superseded the 2007 and 2011 agreements altogether, including their forum-selection clauses. Finally, ERS argued that its complaint raised claims unrelated to the 2007 and 2011 agreements, meaning the forum-selection clauses would not apply even if they remained in force.

---

[1] ERS was not a signatory to either the 2007 or 2011 agreement. The 2007 agreement lists the contracting company as CorpSource Finance Holdings, LLC, and the 2011 agreement lists SourceHOV Holdings, Inc. The amended complaint alleged that SourceHOV acquired CorpSource, and that ERS was a subsidiary of SourceHOV. Regardless, both sides have relied on the agreements as though ERS were a signatory: ERS by suing for breach, and Baker and Thornton by seeking to enforce the venue provisions. Neither side has raised ERS's nonsignatory status as an issue, and we will not address it.

The trial court issued a short order denying the motion to dismiss. The court said it accepted all the complaint's allegations as true, but it offered no discussion of the forum-selection clause issue. Baker and Thornton appeal.

## II.

Contracting parties have the right to select the forum for prospective disputes. *Land O'Sun Mgmt. Corp. v. Commerce & Industr. Ins. Co.*, 961 So. 2d 1078, 1080 (Fla. 1st DCA 2007) (citing *Mgmt. Comput. Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 631 (Fla. 1st DCA 1999)). And courts must enforce forum-selection agreements unless they are "shown to be unreasonable or unjust." *Id.* (citing *Manrique v. Fabbri*, 493 So. 2d 437, 440 (Fla. 1986)). Aggrieved parties may appeal nonfinal orders that concern venue, Fla. R. App. P. 9.130(a)(3)(A), so they can avoid being "forced to litigate the entire controversy in the wrong forum." *Mgmt. Comput. Controls, Inc.*, 743 So. 2d at 630.

Everyone agrees that the 2007 and 2011 agreements contained mandatory forum-selection clauses, in which the parties "irrevocably and unconditionally consent[ed]" to "exclusive jurisdiction" in Delaware courts for any litigation "arising out of or relating" to the agreements. And everyone agrees that the 2007 and 2011 agreements are no longer in force. The principal question on appeal is whether the forum-selection clauses survived after the agreements terminated. We conclude that they did.

Unlike the substantive rights and obligations in a contract, a forum-selection clause is a structural provision that addresses the procedural requirements for dispute resolution. *See Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 857 (11th Cir. 2016) ("While contractual obligations may expire upon the termination of a contract, provisions that are structural (e.g., relating to remedies and the resolution of disputes) may survive that termination."). "Generally, dispute-related provisions, such as forum-selection clauses, are enforceable beyond the expiration of the contract if they are otherwise applicable to the disputed issue and the parties have not agreed otherwise." *U.S. Smoke & Fire Curtain, LLC v. Bradley Lomas Electrolok, Ltd.*, 612 F. App'x 671, 672-73 (4th Cir. 2015).

This court has held that an arbitration provision does not require any type of "savings clause" to survive termination of the contract. *Auchter Co. v. Zagloul*, 949 So. 2d 1189, 1194 (Fla. 1st DCA 2007). The *Auchter* holding is applicable to forum-selection clauses as well.[2] If the parties wanted the forum-selection clauses to apply only during the life of the contracts, they could have explicitly stated so. *See id.* ("Because post-termination disputes are not expressly excluded from the scope of the dispute resolution provisions of the contract, we must construe them as intended to be included."). Instead, the clauses note that the parties "irrevocably and unconditionally" consent to submit to Delaware jurisdiction for "any" actions, suits, proceedings, or litigation arising out of or relating to the agreements. Because "any" means "all," *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) (citing *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997)), the forum-selection clauses apply to *all* disputes related to the contracts, whether those disputes arose before or after termination of the contracts. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977) ("[T]he parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship.").

In arguing that the forum-selection clauses terminated when the rest of the contracts did, ERS relies on the Third District's

---

[2] "Courts have often compared forum selection clauses to arbitration clauses and have applied a similar enforceability analysis to both." *Carnival Corp. v. Booth*, 946 So. 2d 1112, 1115 (Fla. 3d DCA 2006) (quoting *Thunder Marine, Inc. v. Brunswick Corp.*, No. 8:06-CV-384-T17 EAJ, 2006 WL 1877093, at *8 (M.D.Fla. July 6, 2006)); *accord Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (noting that an agreement to arbitrate before a specific tribunal is "in effect, a specialized kind of forum-selection clause"). We reject ERS's argument that the pro-arbitration public-policy rationale included in *Auchter* means we should not follow it in a forum-selection case.

opinion in *DVDPlay, Inc. v. DVD 123 LLC*, 930 So. 2d 816 (Fla. 3d DCA 2006). In that case, contracting parties agreed their disputes would be litigated in California. *Id.* at 817. One party nonetheless sued in Florida, and the other party invoked the forum-selection clause. *Id.* The trial court found the defendant's repudiation of the agreement meant it could not enforce the forum-selection clause. *Id.* The Third District reversed, finding that the forum-selection clause "clearly was intended to survive the termination of the contract." *Id.* at 819. In doing so, the court noted the agreement's survival provision, which specifically stated the forum-selection clause would survive the expiration and/or termination of the agreement. *Id.* Based on that, ERS argues that a forum-selection clause will not survive the agreement's termination *unless* the agreement specifically says so. But that argument overstates *DVDPlay*'s holding. The Third District did not create a per se rule; it merely found that the forum-selection clause survived termination, citing the survival provision as clear evidence of the parties' intent. A forum-selection clause can survive an agreement's termination even without an explicit survival provision. *See TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 536 (E.D. Pa. 2010) *amended on other ground on reconsideration*, No. 10-1054, 2011 WL 204738 (E.D. Pa. Jan. 21, 2011) ("The exclusion of the forum-selection clause from the 'survival' clause—which, as a general matter, is intended to ensure the survival of certain contractual provisions that might otherwise be extinguished upon termination of the agreement—simply does not evidence a clear intent that, upon termination of the agreement, the forum-selection clause would cease to apply to claims arising under the agreement.").[3]

---

[3] ERS also briefly argues that the forum-selection clauses are unenforceable because they are unjust and unreasonable, that "[f]orcing piecemeal litigation" of some claims against some defendants in Delaware and other claims against other defendants in Florida would burden all parties and waste judicial resources. (Ans. Br. at 17). This is insufficient to invalidate a forum-selection clause. *See Manrique*, 493 So. 2d at 440 n.4 ("We emphasize that the test of unreasonableness is not mere inconvenience or additional expense."); *Ill. Union Ins. Co. v. Co-Free, Inc.*, 128 So.

## III.

Having determined that the forum-selection clauses survived the agreements' terminations, we must next decide whether the clauses covered the disputes at issue. In its complaint, ERS sought declaratory relief as to what governed Baker and Thornton's post-employment obligations: the 2007 and 2011 agreements or the 2015 compensation plan. ERS now argues that we should affirm because there is a live dispute as to which agreement governs the parties' relationship. ERS contends that if the 2015 compensation plan controls, as Baker and Thornton maintain, then the forum-selection clauses in the 2007 and 2011 agreements would be inapplicable. ERS therefore suggests that before the case could be dismissed for improper venue, the trial court must first determine which contract applies. We disagree.

The 2007 and 2011 agreements required that *any* dispute arising out of or relating to the agreements be resolved in Delaware. The declaratory-judgment action seeks to determine if the 2007 and 2011 agreements remain in force, an action that unquestionably relates to or arises out of those agreements. The declaratory-judgment count therefore falls within the scope of the forum-selection clauses. The trial court should have dismissed that count for improper venue.

## IV.

The remaining issue is whether the trial court also should have dismissed the rest of ERS's claims. In addition to the declaratory-judgment claim, ERS raised breach-of-contract claims relating to the 2007 and 2011 agreements, along with claims for breach of common law fiduciary duty, breach of duty of good faith

3d 820, 820 (Fla. 1st DCA 2013) ("[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." (quoting *Manrique*, 128 So. 2d at 440 n.4 (quoting *M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)))).

6

and loyalty, unfair competition, intentional interference, and civil conspiracy. ERS argues that even if the forum-selection clauses remain enforceable, its entire complaint against Baker and Thornton should not be dismissed because the complaint raises claims independent from the contractual claims—claims that do not arise out of or relate to the contracts.

When determining whether an agreement's forum-selection clause applies to non-contractual claims, courts have considered whether there is a "significant and obvious nexus" between the claims and the agreement. *Farmers Grp., Inc. v. Madio & Co., Inc.*, 869 So. 2d 581, 582 (Fla. 4th DCA 2004). In *Jackson v. Shakespeare Foundation, Inc.*, 108 So. 3d 587 (Fla. 2013), the supreme court considered this issue in the context of arbitration clauses, noting that:

> A "significant relationship" between a claim and an arbitration provision does not necessarily exist merely because the parties in the dispute have a contractual relationship. Rather, a significant relationship is described to exist between an arbitration provision and a claim if there is a "contractual nexus" between the claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship. In contrast, a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public.

*Id.* at 593 (citations omitted).

Because the trial court never determined whether the breach of common law fiduciary duty, breach of duty of good faith and loyalty, unfair competition, intentional interference, and civil conspiracy claims arose out of or related to the agreements, we

7

conclude we should remand for the trial court's determination in the first instance. If the court concludes that any of the above claims are not significantly related to the 2007 or 2011 agreement, those claims may proceed below. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 642 (Fla. 1999) (concluding common law negligence action did not bear a significant relationship to a contractual agreement and, therefore, the agreement's arbitration provision did not require the tort claim be arbitrated). Any remaining claims (along with the breach-of-contract claims and declaratory judgment action) may not.

REVERSED and REMANDED.

WINSOR, J., and BROWN, JOHN T., ASSOCIATE JUDGE, concur; MAKAR, J., concurs in part and dissents in part with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

MAKAR, J., concurring in part, dissenting in part.

I agree with much of the court's analysis, but I would allow the trial court to adjudicate ERS's declaratory judgment claim, which seeks to determine whether the 2015 agreements govern the post-employment obligations of Baker and Thornton. *See United Services General Life Co. v. Bauer*, 568 So. 2d 1321 (Fla. 2d DCA 1990). If the 2015 agreements supersede their prior agreements, the forum selection issue becomes academic. Whether the parties have chosen independently to displace their prior agreements is an issue separate and apart from issues that might arise from or relate to those prior agreements. If the parties intended to abandon or forego their prior agreements, and enter the new ones, they should have that narrow issue adjudicated where all the witnesses, evidence, and alleged conduct occurred, which is in Leon County, rather than in Delaware. Absent the ability to show that they've superseded their prior agreements, or enter a novation that effectively does so, parties and their potential assignees become permanently shackled to forum-selection clauses

8

they may no longer desire or intend, resulting in needless and costly litigation in far-away fora. For these reasons, the trial court ought to decide this threshold issue in the pending declaratory judgment claim.

_____

Christopher C. Marquardt of Alston & Bird LLP, Atlanta, Georgia, and Claire A. Duchemin of Claire A. Duchemin PA, Tallahassee, for Appellants.

Albert T. Gimbel and Robert J. Telfer III of Messer Caparello PA, Tallahassee, and John P. Leonard and Alfred R. Brunetti of McElroy, Deutsch, Mulvaney & Carpenter, LLP, Morristown, New Jersey, pro hac vice, for Appellee.