# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

FLORIDA PACE FUNDING AGENCY,

Appellant,

v.

PINELLAS COUNTY,

Appellee.

No. 2D23-985

———————————————

March 27, 2024

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Pinellas County; George M. Jirotka, Judge.

James C. Dinkins of CivForge Law, P.A., Orlando, and Bradley J. Ellis, General Counsel of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota; and Anthony J. Manganiello, III, of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota (substituted as counsel of record), for Appellant.

Kelly L. Vicari, Senior Assistant County Attorney, and Donald S. Crowell, Chief Assistant County Attorney, Pinellas County Attorney's Office, Clearwater, for Appellee.

ROTHSTEIN-YOUAKIM, Judge.

Florida PACE Funding Agency (FPFA) appeals the trial court's order denying its motion to dismiss for improper venue. *See* Fla. R. App. P. 9.130(a)(3)(A) (permitting appeal of nonfinal orders concerning venue). Pinellas County persuaded the court to apply the "sword-wielder" exception to the home venue privilege to keep this lawsuit in Pinellas

County. Although we conclude that the County's claims do not trigger that exception, we nevertheless affirm because the forum selection clause in the interlocal agreement between the County and FPFA requires that this dispute be litigated in Pinellas County.

### Background

FPFA is a local government entity created under section 163.01(7), Florida Statutes (2010). It finances energy conservation and hurricane "hardening" improvements on residential and commercial properties. Property owners may use FPFA financing to cover 100% of the costs for eligible projects, including equipment, materials, and labor. FPFA approves the companies that install those improvements. Section 163.08(3) then authorizes an entity like FPFA to levy non-ad valorem assessments to collect the cost of those improvements from the property owner over time.

The County (like other counties in Florida) has used its home rule powers under article VIII, section 1(g), of the Florida Constitution to adopt consumer protection ordinances that regulate the operation of Property Assessed Clean Energy (PACE) local government entities such as FPFA. To that end, the County adopted ordinance 17-37 in 2017. That ordinance is codified at chapter 42, article XIV, of the Pinellas County Code.

Article XIV imposes important limitations on a PACE local government's ability to operate in Pinellas County:

- A PACE local government may operate a program only if it has an interlocal agreement with the County (§ 42-445).

- Only nonresidential property owners are eligible to participate in a PACE program in the County (§§ 42-440, 42-447).

2

- Even as to nonresidential property owners, a PACE local government must still comply with a series of requirements, including using only authorized contractors to perform any work, ensuring that any work complies with code, and utilizing materials that conform with federal and state standards (§ 42-446).

- A PACE local government must also provide mandatory notices to nonresidential property owners on a variety of topics, including the total amount of the debt, that the PACE assessment will appear on the property owner's tax bill, and that the PACE assessment may hinder the sale or refinance of the property (§ 42-446).

*The interlocal agreement*

Initially, FPFA recognized the County's right to regulate its operations. Indeed, it entered into an interlocal agreement with the County in 2019 that recited the following:

> Whereas, the County adopted an ordinance setting minimum standards for the operation of any Property Assessed Clean Energy [program] . . . . ;

> Whereas, the Agency [FPFA] intends to operate a non-residential PACE program within Pinellas County and recognizes that, in addition to the limitations and requirements of applicable state and federal law, it must also comply with the limitations and requirements of the PACE Ordinance.

The agreement then expressly adopts those recitals: "The 'whereas clauses' above are true, correct, and incorporated into this agreement." In addition, the agreement provides that "[a]ll requirements and conditions as defined for the conduct of a PACE Program within the PACE Ordinance are in full effect as if fully laid out herein." Such requirements and conditions necessarily include the ordinance's prohibition of residential PACE financing, together with the ordinance's requirement that a PACE local government entity like FPFA conduct its program in the County under an active interlocal agreement. The

3

agreement also provides that "*venue for any legal or equitable action involving the County arising out of or relating to this Agreement or the Agency or its program in Pinellas County* shall be in the appropriate state court in and for Pinellas County."  (Emphasis added.)

For a little more than two years, FPFA operated peaceably under the interlocal agreement.  But that all changed in late 2022 after FPFA obtained a broad final judgment from a Leon County circuit court in a bond validation action.

*The bond validation judgment and FPFA's*
*subsequent termination of the interlocal agreement*

In October 2022, a circuit court in Leon County validated a series of FPFA bonds worth up to $5 billion.  Significantly, that same judgment includes language that seemingly permits FPFA to finance commercial *and* residential improvements statewide, without regard to municipal or county ordinances that regulate PACE local governments:[1]

> The power and authority of [FPFA] to independently engage and transact with private property owners, enter into financing agreements in the manner provided by the Legislature with private property owners throughout the State to accomplish compelling state interests and impose non-ad valorem assessments, issue its obligations to fund and finance qualifying improvements, all as provided by general law *is separate, alternative, concurrent with, and in all respects independent from any other financing regime or program implemented by any other local government in Florida, unless in all respects voluntarily agreed otherwise by [FPFA] from time to time.*
>
> The additional supplemental authority and nonderogation provisions of sections 163.08(1) and (16), Florida Statutes,

---

[1] The County was not a named party in the bond validation action and contends that it had no notice of that lawsuit before the entry of the judgment.  We express no view on whether the County is bound by the bond validation judgment or whether that judgment includes determinations that exceed the permissible scope of such a proceeding.

4

(2022) relate to the authority and subject matter of the compelling state interest in enabling property owners to voluntarily finance qualifying improvements with local government assistance, *and does not authorize regulation of one local government by another in the financing and non-ad valorem assessment process described by the Legislature* which in the instance of the Supplemental Act and its consensual general law authority providing for voluntary imposition of assessments for qualifying improvements on private property, is within the reserved general law domain of the Legislature.

The character of the Bonds and the nature of the [FPFA] entitle the [FPFA] to proceed in accordance with general law and the provisions of chapter 75, Florida Statutes, including the filing of the Complaint in this Court, for the purpose of obtaining the Court's determination of the power and authority of the Agency to issue the Bonds, the validity of the Bonds, *the power and authority of the [FPFA] to independently and concurrently transact with property owners without interference or regulation from any other local government concerning the funding and financing of qualifying improvements*, the imposition, collection and use of non-ad valorem assessments originated by the [FPFA] throughout the State as Pledged Revenues to repay the Bonds, and all matters in connection therewith.

(Emphases added.)

With the bond validation judgment in its pocket, FPFA sent a letter to the County on January 20, 2023, notifying the County that it was terminating the interlocal agreement effective March 21, 2023, and stating, "Henceforth, the [FPFA's] program will be conducted independently, and not under the Agreement." FPFA asserted that the "[judicial validation] process clarified that the [FPFA] has independent authority to carry out its mission of offering PACE financing statewide, without requiring additional efforts from individual counties or cities."

FPFA's termination letter went so far as to attach a copy of a proposed replacement interlocal agreement that, among other things,

stripped out any language obligating FPFA to comply with County ordinances. FPFA's counsel also prepared and attached to the termination letter a synopsis of the judgment, stating bluntly:

> The [Leon County] judicial validation further clarifies that, because the Florida PACE Funding Agency derives its authority to impose assessments from state statute, it does not need further authority or permission from a general purpose local government to operate within any particular territory, and no local government has liability, responsibility, or authority relating to PACE programs of another local government.

Clearly satisfied that the matter was closed, FPFA financed improvements on at least twenty-two residential properties in Pinellas County between the date of the bond validation judgment and the effective date of the interlocal agreement's termination.

*This lawsuit and the County's claims*

The County subsequently brought this two-count action against FPFA in Pinellas County circuit court. Count one seeks declaratory relief and asks that the court declare that the County may enforce its PACE ordinance against FPFA, notwithstanding the bond validation judgment. Count two seeks injunctive relief and asks that the court enjoin FPFA from conducting any PACE business in the County unless it complies with the Pinellas County Code—including the Code's prohibitions on engaging in a PACE program without an active interlocal agreement and on financing residential PACE improvements. Although it does not assert a separate count for breach of the interlocal agreement, the County nevertheless alleges as a predicate to its counts that FPFA breached that agreement by financing residential improvements in violation of the Code.

*The trial court's ruling on appeal*

6

FPFA moved to dismiss the complaint for improper venue, insisting that the County may only bring this lawsuit in FPFA's home venue, Sarasota County. The County responded that the bond validation judgment violated its "home rule" powers under article VIII, section 1(g), of the Florida Constitution. That section provides, in pertinent part, "The governing body of a county operating under a charter [such as the County] may enact county ordinances not inconsistent with general law." To use "sword-wielder" parlance, the County argued that FPFA is wielding the bond validation judgment as a "sword" against it and that the County's lawsuit is merely a "shield." The trial court embraced the County's argument and denied FPFA's motion, reasoning that the issue of whether the County can enforce its ordinance against FPFA "necessarily entail[s] a constitutional and statutory analysis of the rights and powers of the parties."

Although the County also invoked the interlocal agreement's broad forum selection clause as another reason to keep venue in Pinellas County, the trial court's order does not discuss this alternative ground.

## Discussion

*The sword-wielder exception to home venue*

We discuss the sword-wielder doctrine first. Governmental defendants in Florida are entitled, absent waiver or exception, to "home venue privilege," i.e., to be sued in the county where their headquarters are located. *Carlile v. Game & Fresh Water Fish Comm'n*, 354 So. 2d 362, 363–64 (Fla. 1977) (first citing *Smith v. Williams*, 35 So. 2d 844 (Fla. 1948); and then citing *Ringling Bros.-Barnum & Bailey Combined Shows v. State*, 295 So. 2d 314 (Fla. 1st DCA 1974)). Absent an exception (such as the sword-wielder doctrine), the home venue privilege is absolute. *Dep't of Agric. v. Middleton*, 24 So. 3d 624, 627 (Fla. 2d DCA 2009) (citing

7

*Bush v. State*, 945 So. 2d 1207, 1212 (Fla. 2006)).  The sword-wielder exception may be applicable when a plaintiff's constitutional rights are in "real and imminent danger" of invasion by a governmental defendant. *Jacksonville Elec. Auth. v. Clay Cnty. Util. Auth.*, 802 So. 2d 1190, 1192 (Fla. 1st DCA 2002) (quoting *Barr v. Fla. Bd. of Regents*, 644 So. 2d 333, 335 (Fla. 1st DCA 1994)).

FPFA bore the initial burden of proving its entitlement to the home venue privilege.  *See Fish & Wildlife Conservation Comm'n v. Wilkinson*, 799 So. 2d 258, 260 (Fla. 2d DCA 2001).  It met that burden by establishing, among other things, that it is a Florida governmental defendant based in Sarasota County.  The burden then shifted to the County to "plead and prove" that an exception to the home venue privilege applied.  *See id.* at 261.  We hold that the County failed to plead and prove sufficient facts to trigger the sword-wielder doctrine.

"The type of constitutional invasions which have supported the application of the sword-wielder doctrine have been asserted by a private party and have been fundamental in nature."  *Jacksonville Elec. Auth.*, 802 So. 2d at 1193.  Indeed, the decisions in Florida applying this doctrine to defeat home venue typically involve private plaintiffs (usually individuals) seeking to protect fundamental constitutional rights.  *See, e.g.*, *Pinellas County v. Baldwin*, 80 So. 3d 366 (Fla. 2d DCA 2012) (alleging a taking of private property without compensation); *Barr v. Fla. Bd. of Regents*, 644 So. 2d 333 (Fla. 1st DCA 1994) (invoking free speech rights); *Graham v. Vann*, 394 So. 2d 178 (Fla. 1st DCA 1981) (alleging unconstitutional conditions of confinement); *see also Sch. Bd. of Osceola Cnty. v. State Bd. of Educ.*, 903 So. 2d 963, 967 (Fla. 5th DCA 2005)

8

("The 'sword-wielder' doctrine applies only where a state agency directly threatens an *individual's* constitutional rights.").[2]

The County analogizes its home rule "powers" under article VIII, section 1(g), to an individual's fundamental constitutional "rights." But that, we think, is a bridge too far, and we refuse to expand the protection afforded by the sword-wielder doctrine to what is essentially a showdown between two governmental parties.[3] Further, the bond validation judgment purports to apply statewide; it does not single out the County's ordinance for special condemnation. The County, therefore, is situated no differently with respect to that judgment than any other county or municipality in Florida that lacks an interlocal agreement with FPFA. *See Sch. Bd. of Osceola Cnty.*, 903 So. 2d at 967 (rejecting application of the sword-wielder doctrine and concluding that "[f]inally, there was no showing of particularized harm to OCSB separate and apart from the generalized harm suffered by other school boards in Florida by the operation or enforcement of this statute"); *Worldwide Appraisal Servs. v. Dep't of Bus. & Pro. Regul.*, 905 So. 2d 968, 971 (Fla. 5th DCA 2005) (rejecting application of the sword-wielder doctrine and noting that "[t]he rules and statutes being questioned are statewide in scope").

---

[2] Unlike the trial court and the County, we do not read *School Board of Osceola County* to say that the sword-wielder doctrine is implicated merely by a defendant threatening any type of constitutional violation in the plaintiff's chosen forum; nor do we think that reading consistent with the opinion. *See Sch. Bd. of Osceola Cnty.*, 903 So. 2d at 967.

[3] We do not mean to suggest, however, that government agencies are categorically prohibited from invoking the sword-wielder doctrine. That broad legal question is not before us, and we do not purport to answer it.

Finally, it strikes us that the primary purpose of the County's complaint is a collateral attack on the scope of the bond validation judgment and that any contention by the County that FPFA is directly violating the County's constitutional rights is secondary at best. *See Sch. Bd. of Osceola Cnty.*, 903 So. 3d at 967 ("Here, although OCSB's complaint alleges that the State Board's action infringed on its constitutional rights, the primary purpose of the lawsuit is to challenge the constitutionality of section 1002.33.").

Thus, we do not believe that the County met its burden to plead and prove the applicability of the sword-wielder doctrine. For the reasons that follow, however, we nevertheless affirm based on the interlocal agreement's broad forum selection clause.

*The forum selection clause*

We review de novo the application of a forum selection clause. *TECO Barge Line, Inc. v. Hagan*, 15 So. 3d 863, 865 (Fla. 2d DCA 2009) (citing *Am. Boxing & Athletic Ass'n v. Young*, 911 So. 2d 862 (Fla. 2d DCA 2005)).

FPFA argues that it cannot be bound by the forum selection clause because the County has not sued for breach of the interlocal agreement, because none of the County's claims require that the trial court interpret a provision in the agreement, and because FPFA terminated the agreement before the County brought suit. We reject FPFA's arguments based on the plain language of the clause and a close review of the County's claims.

Absent express language in an agreement to the contrary, forum selection clauses are not extinguished by termination. *See Baker v. Econ. Rsch. Servs., Inc.*, 242 So. 3d 450, 454 (Fla. 1st DCA 2018) ("A forum-selection clause can survive an agreement's termination even

10

without an explicit survival provision.").  That is because "[u]nlike the substantive rights and obligations in a contract, a forum-selection clause is a structural provision that addresses the procedural requirements for dispute resolution." *Id.* at 453; *see also Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 857 (11th Cir. 2016) ("While contractual obligations may expire upon the termination of a contract, provisions that are structural (e.g., relating to remedies and the resolution of disputes) may survive that termination." (citing *Goshawk Dedicated v. Portsmouth Settlement Co. I,* 466 F. Supp. 2d 1293, 1300 (N.D. Ga. 2006))).  A forum selection clause does not require a "savings clause" to survive termination any more than does an arbitration clause. *Baker*, 242 So. 3d at 453.

Further, "[c]ontracting parties have the right to select the venue for their disputes." *Monarch Claims Consultants, Inc. v. Fleming*, 372 So. 3d 758, 761 (Fla. 1st DCA 2023) (citing *Baker*, 242 So. 3d at 452).  FPFA and the County did so in this case.  And here, with its use of the word "shall," the forum selection clause is mandatory rather than permissive. *See Am. Boxing*, 911 So. 2d at 865 ("Forum selection clauses stating that litigation 'must' or 'shall' be initiated in a particular forum are generally considered to be mandatory.").

We construe forum selection clauses according to their plain language, *see Antoniazzi v. Wardak*, 259 So. 3d 206, 209 (Fla. 3d DCA 2018), and enforce them unless they are unjust or unreasonable, *see Am. Safety Cas. Ins. Co. v. Mijares Holding Co.*, 76 So. 3d 1089, 1092 (Fla. 3d DCA 2011).[4]  In this instance, FPFA and the County contracted

---

[4] We need not consider whether the forum selection clause in this case is unjust or unreasonable because FPFA does not suggest that it is either.

11

for a broad forum selection clause that is not limited just to claims "arising under" the interlocal agreement or to claims requiring interpretation of the agreement's substantive provisions.  Rather, this clause expressly covers "*any* legal or equitable action involving the County . . . the Agency or its program in Pinellas County."  And while we would not go so far as to suggest that that provision applies ad infinitum, we have no problem concluding that it applies, at the least, to legal or equitable disputes that arose between the parties while the interlocal agreement was still in effect.

In this case the County has brought two quintessentially equitable claims against FPFA—one for declaratory relief and another for injunctive relief.  Both claims concern FPFA's program in the County, and both turn on events predating the interlocal agreement's termination.  Accordingly, we readily conclude that the forum selection clause applies to the County's claims.  *Cf.* 4 Am. Jur. 2d *Alternative Dispute Resolution* § 59 (2023) ("The termination of the contract prior to a demand for arbitration will generally have no effect on such demand, provided that the dispute in question either arose out of the terms of the contract *or arose when a broad contractual arbitration clause was still in effect.*" (emphasis added)); *Monarch Claims Consultants*, 372 So. 3d at 762 ("Courts have often compared forum selection clauses to arbitration clauses and have applied a similar enforceability analysis to both." (quoting *Baker*, 242 So. 3d at 453 n.2)).

A cause of action for declaratory relief accrues when the following conditions have been met:

> [T]here is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power,

12

privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest[s] are all before the court by proper process or class representation and that the relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

*Coal. for Adequacy & Fairness in Sch. Funding, Inc. v. Chiles*, 680 So. 2d 400, 404 (Fla. 1996) (alterations in original) (quoting *Santa Rosa County v. Admin. Comm'n, Div. of Admin. Hearings*, 661 So. 2d 1190, 1192–93 (Fla. 1995)).  These conditions were easily satisfied here before the interlocal agreement expired.  FPFA wrote the County before expiration that in light of the bond validation judgment, it would henceforth operate without regard to the County's ordinance, that it would offer financing for PACE improvements to both residential and commercial property owners, and that it would do so in the future even if it never entered into another interlocal agreement with the County.  The County's declaratory relief claim therefore arose while the interlocal agreement was still in effect.  *See Ranucci v. City of Palmetto*, 317 So. 3d 270, 274 (Fla. 2d DCA 2021) (holding that a claim for declaratory relief had accrued after a homeowner's association had made it clear that it would challenge "the City's efforts to compel annexation of any property within the Amberwynd of Snead Island subdivision").

The County's claim seeking injunctive relief likewise arose while the interlocal agreement was still in effect.  Specifically, the County pled that FPFA began providing PACE financing to residential property owners in violation of the County's ordinance immediately after the bond validation judgment issued—and well before the interlocal agreement expired in March 2023—and that "such operation of a PACE program within

13

Pinellas County violates state law, local ordinance, and the provisions of the Agreement during such time as it was effective." Nothing more needed to happen for the County to seek injunctive relief against FPFA. *Cf. Polk County v. Mitchell*, 931 So. 2d 922, 926 (Fla. 2d DCA 2006) (reversing trial court's order denying county's motion for temporary injunction where business owner had violated ordinance prohibiting unauthorized business signs and threatened to do so in the future); *P.M. Realty & Invs., Inc. v. City of Tampa*, 779 So. 2d 404, 406 (Fla. 2d DCA 2000) (affirming trial court's entry of temporary injunction against operation of nightclub because the owner had opened the business without the requisite permit).[5]

Accordingly, although we reject the trial court's application of the sword-wielder doctrine to the County's claims, we nevertheless affirm the court's denial of FPFA's motion to dismiss for improper venue based on the forum selection clause.

Affirmed.

SLEET, C.J., Concurs.
ATKINSON, J., Concurs in result only.

_____

Opinion subject to revision prior to official publication.

_____

[5] We offer no view on whether the County is likely to prevail on either count. We conclude merely that the County's claims fit squarely within the broad forum selection clause in the parties' agreement.

14